DUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROMAN VASILCHUK, | CASE NO. C26-0038JLR |
| Petitioner, | ORDER |
| v. | |
| IMMIGRATION AND CUSTOMS ENFORCEMENT FIELD OFFFICE DIRECTOR, | |
| Respondent. | |

## I.   INTRODUCTION

Before the court is *pro se* Petitioner Roman Vasilchuk's 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Pet. (Dkt. # 3); Traverse (Dkt. # 10).)  The Government[1] opposes the petition.  (Return (Dkt. # 6).)  The court has considered the parties'

---

[1] The federal Respondent is Laura Hermosillo, Acting Immigration and Customs Enforcement ("ICE") Field Office Director (the "Government").  (*See* Petition at 1.)

ORDER - 1

submissions, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS Petitioner's petition for writ of habeas corpus.

## II.    BACKGROUND

Petitioner is a citizen of Ukraine presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Pet. at 1.) He is subject to a final order of removal issued in 2011 and was originally ordered removed to Moldova or, in the alternative, to Ukraine. (*See* Baz Decl. (Dkt. # 8) ¶ 12; Strong Decl. (Dkt. # 7), Ex. E (Order of IJ).)

Petitioner entered the United States in September 1997 and adjusted to a lawful permanent resident status on January 28, 2003. (Baz Decl. ¶ 4.) In 2007, he was convicted in the Circuit Court for the State of Oregon for unlawful possession of methamphetamine. (*Id*. ¶ 5.) In September 2009, immigration officers issued Petitioner a Notice to Appear ("NTA") and detained him at the NWIPC. (*Id*. ¶¶ 6-7.) On December 9, 2009, an immigration judge granted Petitioner cancellation of removal, and the Government released him following the hearing. (*Id*. ¶ 8.)

On April 12, 2010, Petitioner was convicted in the Circuit Court for the State of Oregon for Felon in Possession of a Firearm. (*Id*. ¶ 9.) On November 26, 2010, immigration officers again issued Petitioner a NTA and detained him at the NWIPC. (*Id*. ¶¶ 10-11.) On January 4, 2011, an immigration judge ordered Petitioner removed to Moldova or, in the alternative, Ukraine. (Order of IJ; Baz Decl. ¶ 12.) Neither party appealed the judge's decision, and it became administratively final on that date. (Baz

ORDER - 2

Decl. ¶ 12.)  On April 1, 2011, the Government released Petitioner on an Order of Supervision ("OSUP").  (*Id.* ¶ 13; Strong Decl., Ex. F (OSUP).)

The Government represents that on November 18, 2025, Petitioner "missed an [Alternatives To Detention ("ATD")] phone call . . . [and] refused to respond to messages and calls that same day."  (Baz Decl. ¶ 14; *see also* Traverse (stating that Petitioner had a "glitch with the ICE [a]pp").)  Consequently, on December 21, 2025, the Government revoked Petitioner's OSUP and detained Petitioner at the NWIPC, where he has since remained.  (*Id.* ¶¶ 15-17; Pet. at 1.)

On January 5, 2026, Petitioner filed the instant petition.  (Pet.)  The Government represents that on January 17, 2026, Petitioner signed a travel document for Ukraine.  (Baz Decl. ¶ 18.)  On February 23, 2026, the court ordered the Government to provide an update on the status of its efforts to remove Petitioner.  (2/23/26 Order (Dkt. # 9).)  In response, the Government stated that the travel document to Ukraine is pending with the Department of State.  (Andron Decl. (Dkt. # 11-1) ¶ 6.)  On February 25, 2026, the Government requested Petitioner to sign a travel document for Moldova.  (*Id.* ¶ 7.)  Petitioner's petition is now fully briefed and ready for the court's review.

### III.   ANALYSIS

The court first considers the legal standard for detention of noncitizens during immigration proceedings and then turns to the parties' arguments concerning the present immigration habeas petition.

ORDER - 3

**A.    Legal Standard Governing Detention of Noncitizens During Immigration Proceedings**

The INA permits detention of noncitizens present in the United States during immigration proceedings.  8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a).  A noncitizen who is ordered removed must be removed by DHS within 90 days, *id*. § 1231, and, during the removal period, the noncitizen must be detained, *id*. § 1231(a)(2).  When the government fails to remove the noncitizen during that period, the statute only permits further detention of the noncitizen under certain conditions:  (1) the noncitizen is "inadmissible" under certain grounds, (2) the noncitizen is "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) the noncitizen has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal."  8 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

Once the Government releases a noncitizen on an OSUP, re-detention is only permitted under certain circumstances.  8 C.F.R. § 241.13(i) provides that ICE may revoke a noncitizen's release under § 1231 and return them to ICE custody (1) for failure to comply with conditions of release, or (2) if, pursuant to a change in circumstances, ICE "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2).  Re-detention pursuant to § 241.13(i)(1) requires notice and an opportunity for the noncitizen to be heard.  *Id*. (setting forth that after the noncitizen is notified of the reasons for the revocation of their release, the noncitizen must have an opportunity to respond to those reasons by

"submit[ing] any evidence or information that [the noncitizen] believes shows there is no significant likelihood [they] will be removed in the reasonably foreseeable future, or that [they have] not violated the order of supervision").

**B.      The Government's Re-Detention of Petitioner is Unlawful.**

Although the Government is permitted to re-detain noncitizens who fail to comply with the conditions of release, the Government remains subject in all respects to an obligation to effectuate that re-detention in a manner that comports with the Fifth Amendment.  (*See* Return at 6 (citing 8 C.F.R. § 241.13(i)(1) and (2) and asserting that Petitioner violated a condition of his release by failing to check in on November 18, 2025)); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) (finding that, even when the government believes it has a lawful basis for detaining a noncitizen, it must carry out that detention in a manner that complies with due process).  Here, the Government fails to show that it complied with the 8 C.F.R. § 241 requirement to provide Petitioner with notice and an opportunity to be heard before revoking his release.  (*See generally* Return); 8 C.F.R. § 241.13(i)(1)-(2); *see also Velazquez v. Wamsley*, C25-2641JHC, 2026 WL 84223, *3 (W.D. Wash. Jan. 12, 2026) (ordering petitioner who was re-detained for alleged ATD violations released from detention on due process grounds).  The Government provided a copy of a document entitled "Notice of Revocation of Release" dated November 19, 2025, and signed by an immigration officer.  *See* Strong Decl., Ex. G (Notice of Revocation).  The document's

proof of service page, however, is not signed by either the Government or the Petitioner. (*See* Notice of Revocation of Release at 3.)  Although the Government alleges service of the Notice of Revocation of Release, (Return at 3; Baz Decl. ¶ 16), it is not clear to the court that such service was provided or that Petitioner had an opportunity to explain the circumstances surrounding his failed check-in, his first in the nearly 15 years since his release in 2011.  The Government's briefing does not address these due process deficiencies.  (*See generally* Return.)  Thus, the court concludes that the Government's re-detention of Petitioner is unlawful.

## IV.   CONCLUSION

For the reasons above, the court GRANTS Mr. Vasilchuk's petition for writ of habeas corpus (Dkt. # 3).  The court ORDERS as follows:

(1) Respondent is ORDERED to immediately release Mr. Vasilchuk from custody subject to the conditions of his most recent order of supervision;

(2) Respondent is ORDERED to file, by no later than **48 hours** after the issuance of this order, an affidavit confirming that Mr. Vasilchuk has been released from custody.

Dated this 2nd day of March, 2026.

_____

JAMES L. ROBART
United States District Judge

ORDER - 6